IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

JOHN BOUCHER,

 Plaintiff,

v.             Case No. 18-CV-0760

DR. MARTIN AND DEBRA TIDQUIST,

 Defendants.

## DECLARATION OF DR. PAUL BEKX

I, **PAUL BEKX, M.D.**, declare pursuant to 28 U.S.C. § 1746 and under the penalty of perjury as follows:

1. I make this declaration based upon my own personal knowledge and review of the records kept in the course of the regularly conducted activity of the Wisconsin Department of Corrections.

2. I am currently employed as the Medical Director of the Department of Corrections' Bureau of Health Services. In my capacity as the Medical Director, my duties include, but are not limited to: directing the medical, mental health, dental, pharmaceutical and optometry programs for the Department's adult, juvenile and community corrections divisions; supervising the Department's physicians, psychiatrists, optometrist, dental director, mental health director, and pharmacy supervisor; determining the drugs to be listed on the Department's formulary for practitioners to prescribe; developing, implementing, and approving policies and

procedures concerning the medical care of inmates; and delivering a health care system consistent with the community standards of practice.

3. I graduated with a medical degree from the Medical College of Wisconsin in 1995. I have been licensed to practice medicine and surgery in the State of Wisconsin continuously since 1996. I am board certified in Internal Medicine and Endocrinology, Diabetes and Metabolism.

4. I understand that Plaintiff John Boucher (DOC #209123) has been allowed to proceed on claims that Defendants Dr. Martin and Nurse Practitioner Tidquist unnecessarily delayed treatment of Boucher's pre-existing shoulder injury in violation of the Eighth Amendment and Wisconsin law.

5. I have reviewed relevant portions of Boucher's medical records, which are attached and marked ***Exhibit 1000*** and incorporated herein. The medical records are documents that doctors and other treatment providers reasonably rely on when forming medical opinions.

## Facts of the Present Case

6. John Boucher is a 51 year-old individual with a health history that includes chronic back pain, chronic right arm pain from a 2010 injury, and pain in his left elbow, right ankle, and shoulders. (Tarver Decl. Ex. 1000 at 1-11.)

7. In December of 2014, he was in a motor vehicle accident in Mexico. In the month following the accident he experienced right shoulder pain and limited range of motion. An X-ray ordered by the San Diego Sheriff's office in December of 2014 showed degenerative arthrosis – a condition associated with aging. No fracture

was evident. He was treated conservatively at the time with anti-inflammatory medications (Tarver Decl. Ex. 1000, at 6,7, 38-41.)

8.      On February 24, 2015, Boucher underwent an intake health screening at the Dodge Correctional Institution (Dodge). His medical history records indicate he was involved in a December 2014 motor vehicle accident in Mexico. His intake records list multiple health issues, including injury to left arm, elbow, and ribs, right ankle issues, and a "possible right rotator cuff injury." (Tarver Decl. Ex. 1000, at 1-5.)

9.      Boucher received a Gabapentin prescription on April 6, 2015.  (Tarver Decl. Ex. 1000, at 43.)

10.     On May 5, 2015, Boucher was transferred from Dodge to Jackson Correctional Institution (Jackson). (Tarver Decl. Ex. 1000, at 12.)

11.     On 5/7/2015, Boucher completed a Health Service Request (HSR) in which he asked for a wheelchair. Among other reasons for the request, he cited that he had a disabled ankle and a "permanently disabled right shoulder." (Tarver Decl. Ex. 1000, at 13.)

12.     On 6/16/15, an order was written for physical therapy to evaluate the seg cell and patient mobility.  (Tarver Decl. Ex. 1000, at 15.)

13.     It is my understanding that Boucher alleges that he asked for an MRI and a referral to an orthopedic doctor in May 2015. There are limited progress notes or medical records from around this time.  Progress notes show a few visits in May and June of 2015 for concerns of ambulation and need of a walker/cane/wheelchair

and no progress note visits from 6/16/15 to 4/18/16. There is no specific request for an MRI or to see an orthopedist in May or June of 2015. Typically, for shoulder immobility and pain, an MRI or orthopedic evaluation would not be the first line of therapy. Rather, anti-inflammatory medications and physical therapy evaluation and treatment would be first line therapies. MRI and orthopedic referral would be indicated if these conservative measures did not result in improvement.

14. On May 9, 2015, Boucher completed a Refusal of Recommended Health Care form in which he stated that he refused to take gabapentin as prescribed and that he did not want to come to HSU anymore. (Tarver Decl. Ex. 1000, at 14.)

15. Eleven months later, on April 18, 2016, Boucher was seen in the Health Services Unit (HSU) at his request for pain in his right shoulder. Per records available for review, this is the first indication of request for evaluation of right shoulder pain. According to the Nursing Encounter Protocol, the reported onset of pain was April 14, 2016. Per preset plans of care, nursing staff arranged for follow-up with physical therapy and provided education on range of motion. (Tarver Decl. Ex. 1000, at 16-17.)

16. On April 28, 2016, Boucher underwent the start of physical therapy for his complaint of right shoulder pain. The assessment was rotator cuff compromise and plan was for conservative therapy to regain function and strength and to reduce pain. Boucher was to follow up with a physician or nurse practitioner. (Tarver Decl. Ex. 1000, at 19-20.)

17. Boucher continued with physical therapy treatments and medication to gain strength and to manage pain. He was seen by physical therapy multiple times from May through August of 2016 and made progress in both range of motion and strength. (Tarver Decl. Ex. 1000, at 44-49.)

18. On August 17, 2016, physical therapy noted that Boucher plateaued in progress and was "near maximum benefit of [physical therapy]." Boucher was instructed to follow up with a physician and continue physical therapy one time per week unless otherwise directed. (Tarver Decl. Ex. 1000, at 21.)

19. On September 1, 2016, Dr. Martin recommended Boucher to get a plain X-ray of his right shoulder. Dr. Martin indicated Boucher had right shoulder pain with abnormalities but had full range of motion. (Tarver Decl. Ex. 1000, at 22, 23.)

20. According to a September 7, 2016 Radiology Report of the right shoulder X-ray, the glenohumeral joint was in alignment, but there was narrowing of the joint space due to modest degenerative changes. The report indicates that the acromioclavicular coracoclavicular joints also were normal and that no shoulder fracture, separation or dislocation was seen. The conclusion was "modest degenerative joint disease of the right shoulder; otherwise, no fracture or dislocation seen." (Tarver Decl. Ex. 1000, at 25.)

21. Because of the plateau in PT, continued pain and plain X-ray results, on September 14, 2016, Dr. Martin referred Boucher for an MRI of the right shoulder. (Tarver Decl. Ex. 1000, at 24, 27, 33, 38-41.)

5

22. On September 30, 2016, Boucher underwent MRI imaging at Black River Hospital. The impression indicated a "full-thickness supraspinatus and anterior aspect of infraspinatus tendon tear" and "severe-fatty atrophy of supraspinatus infraspinatus muscles." (Tarver Decl. Ex. 1000, at 26.)

23. On October 11, 2016, Boucher met with Dr. Martin and because of the results of the MRI showing significant anatomical tears and because of the plateau in physical therapy, a referred was arranged for an orthopedic consult for his right shoulder rotator cuff tear. (Tarver Decl. Ex. 1000, at 24, 33.)

24. On November 9, 2016, Boucher received an orthopedic consultation with Dr. Grossman. Dr. Grossman indicated that Boucher had a chronic rotator cuff tear which was unrepairable. (Tarver Decl. Ex. 1000, at 29.)

25. Large retracted tears with significant muscle atrophy may not be repairable. When the muscle is replaced by fat, as in this case, recovery of strength and function is not possible. Atrophy is caused by inactivity of the muscle and the common treatments are exercise and physical therapy which Boucher had already been receiving. Muscle atrophy of this degree is not reversible. There was discussion on other treatment options including the need for possible future arthroplasty (shoulder replacement) (Tarver Decl. Ex. 1000, at 28, 31.)

26. Dr. Grossman administered a Depo-Medrol injection which had no immediate improvement for Boucher's discomfort. I agree with Dr. Grossman's statement that the "failure to respond to injection therapy is a grave prognostic indicator for any type of operation intervention." (Tarver Decl. Ex. 1000, at 29-30.)

6

27. Boucher also underwent another X-ray of the right shoulder on November 9, 2016. The X-ray results indicated mild degenerative changes at the shoulder joint and mid elevation of the humeral head relative to the glenoid. (Tarver Decl. Ex. 1000, at 32.)

28. On November 30, 2016, Dr. Martin followed up with Boucher and recommended return to physical therapy since surgery was not an option as a course of treatment. (Tarver Decl. Ex. 1000, at 34.)

29. I believe the care provided to Mr. Boucher met the standard of care for this condition. In general, shoulder injuries are first treated conservatively with anti-inflammatory medications and physical therapy. Many shoulder conditions respond to these initial interventions and thus surgery can be avoided. During Mr. Boucher's physical therapy sessions in the summer of 2016, he was making progress in both strength and range of motion. When he plateaued in his improvement and still experienced deficiencies, the appropriate referral was made to orthopedics.

30. Boucher returned to with physical therapy on December 15, 2016, following his orthopedic evaluation. (Tarver Decl. Ex. 1000, at 35.)

31. For the next year, Boucher continued on physical therapy and medication to manage his right shoulder pain. He did also receive a shoulder injection on 3/28/17 with some relief of his pain. On July 3, 2018, it was reaffirmed that Boucher was still not a candidate for surgery. (Tarver Decl. Ex. 1000, at 36.)

32. In this case, there appears to have been two separate reported injuries – an injury in 2010 causing right arm pain and the December 2014 bike vs. car

accident in Mexico. It is impossible to tell which injury—the 2010, 2014, both or neither—caused the rotator cuff tear. Per records available, the first healthcare request specifically for right shoulder care occurred on April 18, 2016. Thus, by the time of Boucher's specific request for treatment of his shoulder pain on April 18, 2016, the muscle atrophy and fatty replacement had very likely already occurred and outcomes would not have changed if an MRI or orthopedic evaluation would have been done sooner in 2015 or 2016.

*33.* It is my professional opinion that the treatment provided for Boucher's right shoulder in 2015 and 2016 by Dr. Martin, Nurse Tidquist and others is consistent with medical standards of care and in accordance with DOC policies and procedures. Dr. Martin's referral for an MRI and orthopedic consult in 2016 appears to be have been appropriate. In my opinion, medical care for Boucher's right shoulder was not denied or delayed in a manner which resulted in injury or pain. Per records available, he first requested care for this specific condition on April 18, 2016, was seen by physical therapy April 28, 2016, and soon began physical therapy treatments with improvement until a reported plateau on August 17, 2016, was seen in follow up by Dr Martin on September 1, 2016, referred for an MRI on September 30, 2016 and, because of the results, seen by orthopedics on November 9, 2016. As he was not deemed to be a surgical candidate, he was again referred to physical therapy and received pain medications and an additional injection in March of 2017. (Tarver Decl. Ex. 1000, at 19-31.)

*Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.*

Executed on November  21 , 2019.

<u>    s/Paul Bekx,MD           </u><br>
PAUL BEKX, M.D.