IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

JOHN BOUCHER,

    Plaintiff,

v.                                         Case No. 18-CV-460

DEBRA TIDQUIST AND
W. BRADFORD MARTIN,

    Defendants.

## DECLARATION OF DEBRA TIDQUIST

    I, **DEBRA TIDQUIST**, declare pursuant to 28 U.S.C. § 1746 and under the penalty of perjury, that the following is true and correct.

    1.    I make this declaration based on my own personal knowledge and review of the records kept in the course of the regularly conducted activities of the Wisconsin Department of Corrections (DOC) and Jackson Correctional Institution (Jackson).

    2.    I am currently employed by the Corrections' Bureau of Health Services as an Advanced Practice Nurse Prescriber (APNP) at Jackson. I have been licensed as an APNP (or nurse practitioner) in the State of Wisconsin continuously since March 30, 2009 and as a registered nurse since 1993.

    3.    In my capacity as an APNP, I work under the general supervision of the Medical Director and in collaboration with the institution physician to provide medical services to inmates in the institution's Health Services Unit (HSU),

including patient evaluation, assessment and treatment. I demonstrate a high degree of clinical expertise in providing preventative and primary care in the correctional setting. As an APNP, I have the authority to make diagnoses and prescribe medications.

4. It is my understanding that Plaintiff John Boucher (DOC #209123) alleges that Dr. Martin and I unnecessarily delayed treatment of Boucher's shoulder injury and referral to an orthopedist in violation of the Eighth Amendment and Wisconsin law.

5. For purposes of this declaration, I have reviewed the portions of Boucher's medical record which are marked as **Exhibit 1000** and which relate to his allegations that he was subjected to delay in the treatment of his right shoulder.

6. When an inmate has a medical concern, wishes to communicate with medical staff, and/or requests to be seen by HSU staff, he needs to fill out a Health Services Request form and submit it to HSU.

7. Health Services Requests are triaged by HSU staff daily.

8. On May 5, 2015, Boucher was transferred from Dodge Correctional Institution to Jackson Correctional Institution. His medical history records indicate that he was in a December 2014 motor vehicle accident with no subsequent treatment or surgery. His records further indicate that his health issues included chronic back pain, restrictions for his ribs, a 2010 arm injury, and possible right rotator cuff injury. (Tarver Decl. Ex. 1000, at 1-12.)

9. On the same date, Boucher completed a Health Service Request (HSR) in which he asked for a wheelchair, citing among other reasons that he had a permanently disabled right shoulder. A permanent injury increases the likelihood that the problem will be more difficult to treat later and makes a significant difference in the treatment plan. (Tarver Decl. Ex. 1000, at 13.)

10. Boucher had been prescribed Gabapentin for pain management on April 6, 2015. (Tarver Decl. Ex. 1000, at 43.)

11. On May 9, 2015, Boucher requested through an HSR to be taken off Gabapentin. Boucher completed a Refusal of Recommended Health Care in which he described that didn't want to come to HSU anymore for health care. (Tarver Decl. Ex. 1000, at 14, 15.)

12. Boucher was next seen in HSU at his request for pain in his right shoulder on April 18, 2016. (Tarver Decl. Ex. 1000 at 16-17.)

13. According to the Nursing Encounter Protocol, pain in his shoulder was making it difficult to use his walker. I gave a verbal order to follow up with physical therapy and provided education on range of motion. Physical therapy is a typical modality to treat injuries of shoulders. (Tarver Decl. Ex. 1000, at 16-17.)

14. Starting on April 28, 2016, Boucher underwent physical therapy treatments to gain strength and received medication to manage pain. (Tarver Decl. Ex. 1000 at 44-49.)

15. On September 14, 2016, Dr. Martin referred Boucher to get an MRI for his right shoulder. On September 19, 2016, I scheduled Boucher's MRI for his right shoulder for better assessment of his injury. (Tarver Decl. Ex. 1000, at 23, 24, 42.)

16. Dr. Martin also referred Boucher for an orthopedic consultation with Dr. Grossman which he seen on November 9, 2016. Dr. Grossman and he indicated that Boucher had a chronic rotator cuff tear which was unrepairable. Therefore, Dr. Grossman recommend a Depo-Medrol injection which had no immediate improvement for Boucher's discomfort. The "failure to respond to injection therapy is a grave prognostic indicator for any type of operation intervention." (Tarver Decl. Ex. 1000, at 29, 30.)

17. Physical therapy, home exercise programs, and pain medications are typical treatment options for shoulder injuries like Boucher's when surgery is not an option.

18. Boucher continued with physical therapy since surgery was not an option as a course of treatment due to his injury being unrepairable. Boucher had severe atrophy which limits treatment for shoulder injuries. (Tarver Decl. Ex. 1000, at 34-36.)

19. Boucher had continual medical care for his right shoulder injury and was referred to orthopedics, physical therapy, and had radiological tests. However, due to the age and severity of atrophy in his shoulder injury, it did not necessitate surgery.

20. To my knowledge, and based on my review of the record, the treatment of Boucher's shoulder condition provided since his transfer to Jackson on May 5, 2015, is consistent with medical standards of care and in accordance with DOC policies and procedures.

*Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.*

Executed on November __21__, 2019.

*s/Debra Tidquist*
DEBRA TIDQUIST
