IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

JOHN BOUCHER,

                  Plaintiff,

v.

W. BRADLEY MARTIN and DEBRA TIDQUIST,

                 Defendants.[1]

OPINION and ORDER

18-cv-760-jdp

---

Pro se plaintiff and prisoner John Boucher is proceeding on a claim that defendants W. Bradley Martin (a prison doctor) and Debra Tidquist (a prison nurse practitioner) failed to adequately treat a torn rotator cuff his until it was too late to be repaired, in violation of the Eighth Amendment and state common law. Defendants now move for summary judgment. Dkt. 23. For the reasons explained below, I will allow Boucher's claims against Martin to proceed, but I will dismiss Boucher's claims against Tidquist.

I will also attempt to recruit volunteer counsel to represent Boucher at trial. Because that process could take a significant amount of time, I will postpone the trial and strike all remaining deadlines. That decision moots defendants' recently filed motion to stay their pretrial deadlines. Dkt. 44.

UNDISPUTED FACTS

The following facts are undisputed, except where noted.

---

[1] I have amended the caption to include defendant Martin's full name, as reflected in the acceptance of service form filed by the Wisconsin Department of Justice. *See* Dkt. 8. Martin died after Boucher filed this lawsuit, but the Wisconsin Department of Justice has agreed to defend the claim against him and to pay any judgment entered against him. *See* Dkt. 18.

In 2014, Boucher had an accident in Mexico, causing "excruciating pain" in his right shoulder. (Boucher says it was a bicycling accident; defendants say that it was a car accident.) Boucher was in violation of his terms of extended supervision at the time, and he surrendered himself to U.S. Border Patrol after the accident.

Boucher was transferred to the San Diego County jail, where medical staff observed that Boucher had a limited range of motion in his right shoulder. He complained that he was in severe pain and was given naproxen. An x-ray did not reveal a fracture, but it did show degenerative arthrosis, which is associated with aging. Medical staff also told Boucher that they would order an MRI and a consultation with an orthopedic surgeon, but that didn't happen before Boucher was transferred again in February 2015, this time to Dodge Correctional Institution in Wisconsin. Staff at Dodge told Boucher that he could not receive an orthopedic consultation until he was transferred to a long-term facility. (Dodge primarily serves as intake facility.)

On May 5, 2015, Boucher was transferred to Jackson Correctional Institution, where defendants were employed. On May 7, a nurse (not a defendant) examined Boucher, in response to a health service request in which he said that he needs a wheelchair because he has ankle and shoulder injuries.

After examining Boucher's shoulder, the nurse summoned Martin, a prison doctor. According to Boucher, he told Martin that he had been experiencing "throbbing pain" in his right shoulder that was an "8 out of 10 on the pain scale" for five months, he had limited range of motion in that shoulder, and his pain medication was not working. He asked for an MRI and a consultation with an orthopedic surgeon. Instead, Martin prescribed a walker. When Boucher said that the walker would exacerbate his shoulder pain, Martin said that Boucher

"didn't deserve" a wheelchair. Defendants deny that Boucher complained about his shoulder pain on May 7.

A few days later, Boucher fell while using his walker. After the warden dismissed a grievance that Boucher filed about the issue, Boucher became discouraged and concluded that prison staff wouldn't help him with his shoulder injury.

Boucher didn't seek treatment for his shoulder for the next 11 months, until April 18, 2016, when he filed a health services request in which he complained about severe shoulder pain. A nurse (not a defendant) examined Boucher and ordered a physical therapy evaluation.

On April 28, Boucher was evaluated by a physical therapist, who stated that Boucher's shoulder pain was "most likely caused by rotator cuff compromise."

On April 29, Boucher had a follow-up appointment with Tidquist, a prison nurse practitioner. The parties dispute what happened at that appointment. Tidquist says that she examined Boucher and provided education on range of motion. Boucher says that she did not test his range of motion, conduct an examination, or provide education. The parties agree that Tidquist ordered six weeks of physical therapy.

In June 2016, Boucher complained to Martin that his shoulder wasn't improving with physical therapy and that therapy was causing even more pain. Boucher also told Martin that he had never received an MRI. Without conducting an examination, Martin told Boucher to continue with physical therapy for another month. If there was no improvement then, Martin said that he would order an MRI.

Boucher continued physical therapy until August 2016. Therapy improved Boucher's strength and range of motion, but he also reported more pain. After the physical therapist determined that Boucher had obtained "near maximum benefit" from therapy, Martin ordered

3

an x-ray of Boucher's shoulder. After reviewing the x-ray, Martin determined Boucher had "modest" degenerative joint disease of the shoulder and narrowing of the joint space but no fracture or dislocation. Martin referred Boucher for an MRI of his right shoulder.

On September 30, Boucher received an MRI, which showed significant tears to Boucher's rotator cuff. As a result, Martin referred Boucher for an orthopedic consultation.

The orthopedic surgeon concluded that Boucher had a rotator cuff tear and noted that Boucher had "remarkably little shoulder motion." Dkt. 38-23. The surgeon gave Boucher a corticosteroid, but Boucher didn't experience any improvement. The surgeon concluded that the rotator cuff tears are "unrepairable," but he didn't say why.

Since 2016, Boucher has been treated with a combination of physical therapy and steroid injections. Boucher continues to suffer from extreme shoulder pain.

ANALYSIS

A. Scope of Boucher's claims

I allowed Boucher to proceed on claims that defendants violated his rights under the Eighth Amendment and Wisconsin's common law of negligence by refusing to diagnose and treat his shoulder injury for such a long period of time that the damage became irreparable. Although Boucher discussed other medical issues in his complaint, he did not include those other issues in his "causes of action" at the end of his complaint, so I informed Boucher that I did not understand Boucher to be raising claims about those issues. *See* Dkt. 6, at 2 n.1

Boucher did not seek reconsideration of the screening order and he did not file an amended complaint. But he discusses other issues in his summary judgment materials. In his brief, he says that defendants failed to prescribe effective pain medication. *See* Dkt. 35, at 2.

In his declaration, he says that Martin refused his request for a wheelchair. *See* Dkt. 38, ¶¶ 19–20. In his proposed findings of fact, he complains about inadequate responses he received from health services requests, though he doesn't say that either defendant knew anything about those requests. *See* Dkt. 42, ¶¶ 31–33, 35–36, 47.

I did not allow Boucher to proceed on any of these others claims, he doesn't cite any allegations in his complaint that provided fair notice of the claims, and he doesn't develop an argument in support of the claims in his summary judgment brief. So I will limit my consideration to Boucher's claim about the delay in treatment by Martin and Tidquist.

**B. Eighth Amendment claim**

A prison official violates a prisoner's Eighth Amendment right to medical care if the official is "deliberately indifferent" to a "serious medical need." *Estelle v. Gamble*, 429 U.S. 97, 104–05 (1976). A "serious medical need" is a condition that a doctor has recognized as needing treatment or one for which the necessity of treatment would be obvious to a lay person. *Johnson v. Snyder*, 444 F.3d 579, 584–85 (7th Cir. 2006). The condition does not have to be life threatening. *Id.* A medical need may be serious if it "significantly affects an individual's daily activities," *Gutierrez v. Peters*, 111 F.3d 1364, 1373 (7th Cir. 1997), if it causes significant pain, *Cooper v. Casey*, 97 F.3d 914, 916–17 (7th Cir. 1996), or if it otherwise subjects the prisoner to a substantial risk of serious harm, *Farmer v. Brennan*, 511 U.S. 825 (1994). "Deliberate indifference" means that the officials are aware that the prisoner needs medical treatment, but are disregarding the risk by consciously failing to take reasonable measures. *See Forbes v. Edgar*, 112 F.3d 262, 266 (7th Cir. 1997).

Thus, a claim under the Eighth Amendment for failing to provide adequate medical care has three elements:

> (1) Did the prisoner need medical treatment?
>
> (2) Did the defendant know that the prisoner needed treatment?
>
> (3) Despite his or her awareness of the need, did the defendant consciously fail to take reasonable measures to provide the necessary treatment?

In response to a motion for summary judgment, it is the plaintiff's burden to show that a reasonable jury could find in his favor on each of these elements. *Henderson v. Sheahan*, 196 F.3d 839, 848 (7th Cir. 1999).

There is no dispute that Boucher has a rotator cuff tear and that the tear qualified as a serious medical need at the time that Boucher was under defendants' care. There is also no dispute that both defendants knew that Boucher needed medical treatment, but there is some dispute about when Martin first learned of Boucher's shoulder condition. The parties also dispute whether either Martin or Tidquist consciously failed to take reasonable steps to provide needed treatment. Because Boucher's claims against Martin and Tidquist have substantial differences, I will consider them separately.

1. **Martin**

    a. **Awareness of serious medical need**

Defendants admit that Martin knew about Boucher's shoulder injury, but they say that Boucher didn't complain about it to Martin until 2016. But Boucher says that that he saw Martin in May *2015*, and Boucher told Martin that his shoulder had been in great pain for five months and he had a limited range of motion. At the summary judgment stage, "the party opposing the motion gets the benefit of all facts that a reasonable jury might find, *Loudermilk v. Best Pallet Co., LLC*, 636 F.3d 312, 314 (7th Cir. 2011), so I must assume that Martin learned about Boucher's should injury in May 2015. And defendants do not contend that Boucher's

shoulder injury at that time wasn't a serious medical need, so Boucher has adduced evidence to support this element.

 b. **Consciously failed to provide reasonable treatment**

In support of their contention that Martin acted reasonably, defendants rely on the opinion of Paul Bekx, the medical director of the Department of Corrections Bureau of Health Services. *See* Dkt. 26. Bekx says that it was reasonable for Martin to order an x-ray and MRI and then refer Boucher to a specialist when he did. But Bekx's opinion rests on the assumption that Martin's first interaction with Boucher was in September 2016, when Martin ordered an x-ray of Boucher's right shoulder. Bekx overlooks both Boucher's June 2016 appointment with Martin—when Boucher said that he wanted an MRI and complained that physical therapy was exacerbating his shoulder pain—and Boucher's allegation that he complained to Martin in May 2015 that he had been suffering from shoulder pain for five months.

Boucher alleges that Martin provided no treatment for his shoulder in May 2015, but instead prescribed a walker, even though Boucher said that a walker would exacerbate his shoulder pain. "A deliberate refusal to treat is an obvious violation of the Eighth Amendment." *Ralston v. McGovern*, 167 F.3d 1160, 1161–62 (7th Cir. 1999). So Boucher has adduced evidence on this element as well.

 c. **Evidence of harm**

Defendants contend that Boucher's claim against Martin fails because Boucher hasn't offered expert testimony that any delay by Martin in treating Boucher contributed to his injury. They rely on cases in which the court has required prisoners to submit "verifying medical evidence" to show that a delay in providing treatment caused harm. *See, e.g.*, *Jackson v. Pollion*, 733 F.3d 786, 790 (7th Cir. 2013); *Langston v. Peters*, 100 F.3d 1235, 1240 (7th Cir. 1996).

7

The court of appeals has adopted a liberal standard for what qualifies as verifying medical evidence. For example, in *Gayton v. McCoy*, 593 F.3d 610, 624–25 (7th Cir. 2010), the court stated, "[p]roximate cause is a question to be decided by a jury, and only in the rare instance that a plaintiff can proffer no evidence that a delay in medical treatment exacerbated an injury should summary judgment be granted on the issue of causation." In this case, defendants' expert provides the necessary foundation for a finding of harm. *See Conley v. Birch*, 796 F.3d 742, 749 (7th Cir. 2015) (relying on testimony submitted by defendant to show that delay in providing medical care caused harm).

Bekx states that Boucher's tear was not repairable because he had a "[l]arge retracted tear[] with significant muscle atrophy . . . . When muscle is replaced by fat, as in this case, recovery of strength and function is not possible. Atrophy is caused by inactivity of the muscle and the common treatments are exercise and physical therapy. . . . Muscle atrophy of this degree is not reversible." Dkt. 26, ¶ 25. In other words, Boucher's rotator cuff became unrepairable because there had been too much muscle atrophy through inactivity over time. This supports a finding that Boucher's chances of a successful repair would have been higher if he had received treatment sooner. Both medical journals and case law also support the view that long delays in treatment diminish a patient's chances of repairing a rotator cuff tear.[2]

---

[2] *See, e.g., Namer v. United States,* No. 213CV3KGBJJV, 2015 WL 5608224, at *2 (E.D. Ark. Sept. 23, 2015), *aff'd*, 668 F. App'x 188 (8th Cir. 2016) (citing American Academy of Orthopeadic Surgeons for the proposition that a delay in treating a rotator cuff tear "would increase the problems of the surgeon in doing a repair due to scarring and therefore would not be within the standard of care for treatment of a retracted rotator cuff tear"); *Amrani v. United States*, No. 12-CV-2583 (JWS), 2015 WL 12952700, at *7 (D. Ariz. Apr. 1, 2015) (finding that doctor's "delay in seeking medical care for the torn rotator cuff reduced the prospects for a good rotator cuff repair"); *Laird v. United States,* No. 13CV00119 BSM, 2014 WL 5420277, at *6 (E.D. Ark. Oct. 22, 2014) (reasonable jury could infer that delaying rotator cuff surgery was negligent); Yuzhou Chen, et al., *A Long Preoperative Duration of Symptoms Is Associated With Worse Functional Outcomes After 1-Stage Arthroscopic Treatment of Rotator Cuff Tears With Shoulder*

Boucher doesn't have to show to a certainty that his injury could have been resolved or lessened if Martin had acted sooner. Evidence of the "loss of a chance" to avoid harm is sufficient. *See Thomas v. Illinois,* 697 F.3d 612, 614–16 (7th Cir. 2012).

Bekx says that "the muscle atrophy and fatty replacement had very likely already occurred" when Boucher first sought medical treatment from defendants, Dkt. 26, ¶ 32, but that opinion is based on two disputed facts. First, Bekx says that it is impossible to determine whether faster treatment would have made a difference because Boucher had a preexisting shoulder injury from 2010. *Id.* But the basis for that belief is not clear. In any event, Boucher denies that his shoulder was injured in 2010, Dkt. 43, ¶ 44, and I must accept his version of the facts at the summary judgment stage.

Second, Bekx assumes that Boucher didn't ask for treatment until 2016, but, as discussed above, Boucher says that he told Martin a year earlier about his shoulder injury. Bekx states that the appropriate initial treatment after a should injury is physical therapy, which is important to preserve the muscle. *Id.*, ¶ 25. Because Boucher didn't receive physical therapy for nearly a year after he says he first reported the injury, a reasonable jury could infer that the delay in treatment harmed Boucher.

   d. **Qualified immunity**

Defendants have raised the defense of qualified immunity, which applies when the law does not clearly establish that the defendants' conduct, viewed in the light most favorable to the plaintiff, violates the Constitution. *See Florek v. Village of Mundelein, Ill.*, 649 F.3d 594, 598

---

*Stiffness*, 45 American Journal of Sports Medicine 2336 (Aug. 2017) (outcomes for patients who waited less than six months for rotator cuff repair had a better overall outcome with higher functional scores and improved range of motion than patients who waited more than six months).

(7th Cir. 2011). In this case, defendants' only argument for applying qualified immunity is that "there are no analogous cases that provide notice that conservative treatment of shoulder pain as a first-line therapy amounts to cruel and unusual punishment." Dkt. 24, at 24. But, again, this argument relies on an assumption that Boucher did not seek treatment for his shoulder until 2016. At the summary judgment stage, I must accept as true Boucher's testimony that he complained to Martin in 2015 and that Martin provided no treatment at that time. Because it is undisputed that Boucher had a serious medical need in 2015 and it is well established that a doctor may not disregard a serious medical need, Martin is not entitled to qualified immunity. *See Hayes v. Snyder,* 546 F.3d 516, 528 (7th Cir. 2008) ("It has been established for decades that prison physicians violate inmates' constitutional rights when they deliberately disregard an inmate's serious medical condition, and only a trial can resolve the facts that are in dispute.").

   2. **Tidquist**

Boucher had one appointment with Tidquist in April 2016. Boucher says almost nothing about Tidquist in his brief, but I understand him to be contending that she violated his rights by prescribing physical therapy without examining him first. Tidquist denies Boucher's allegations, but the dispute isn't material. Even if it is true that Tidquist didn't examine him, Boucher admits that another nurse had already examined him and determined that physical therapy was appropriate. Bekx says that physical therapy is the appropriate treatment for initially assessing a shoulder injury, Dkt. 26, ¶ 29, and Boucher cites no evidence to contradict that testimony. And Boucher doesn't allege that he told Tiqduist that he'd been suffering from shoulder pain since 2014, so she would have had no reason to believe that more

aggressive treatment was needed. So I will dismiss Boucher's Eighth Amendment claim against Tidquist.

## C. Negligence claims

Wisconsin law defines medical negligence as the failure of a medical professional to "exercise that degree of care and skill which is exercised by the average practitioner in the class to which he belongs, acting in the same or similar circumstances." *Sawyer v. Midelfort*, 227 Wis.2d 124, 149, 595 N.W.2d 423, 435 (1999); *Schuster v. Altenberg*, 144 Wis. 2d 223, 229, 424 N.W.2d 159, 161B62 (1988). Like all claims for negligence, a claim for medical malpractice includes the following four elements: (1) a breach of (2) a duty owed (3) that results in (4) harm to the plaintiff. *Paul v. Skemp*, 2001 WI 4217, 242 Wis. 2d 507, 625 N.W.2d 860 (2001). Thus, to establish a prima facie medical negligence claim, a plaintiff must show that the defendants failed to use the required degree of skill exercised by an average respective medical professional, that plaintiff was harmed and that there is a causal connection between the defendants' failure and plaintiff's harm. Wis. JI Civil 1023.

Boucher's negligence claim against Tidquist fails for the same reason as his Eighth Amendment claim: Boucher hasn't cited any evidence that Tidquist did anything wrong based on the information she had at the time. So I will dismiss the negligence claim against Tidquist.

But I will allow Boucher's negligence claim against Martin to go forward. Defendants' only argument for dismissing that claim is that Boucher doesn't have expert testimony to support his claim. As discussed above, the testimony of defendants' own expert is sufficient to allow a reasonable jury to find that Martin's failure to treat Boucher caused harm. And that testimony is also sufficient to support a finding that Martin's conduct fell below the standard of care by failing to treat Boucher's shoulder sooner.

11

**D. Assistance in recruiting counsel**

Earlier in the proceedings, Boucher sought assistance in recruiting counsel. *See* Dkt. 12. Although Boucher demonstrated that he could not afford to pay counsel and that he had made reasonable efforts to find counsel on his own, I denied his motion because it was unclear at the time whether the case would turn on questions involving medical expertise. *See* Dkt. 13, at 2. Now that it appears that issues such as medical judgment, causation, and standard of care are important to resolving Boucher's claims, I conclude that it is appropriate to attempt to recruit volunteer counsel to represent Boucher.

If I find counsel willing to represent Boucher, I will advise the parties of that fact. Soon thereafter, a status conference will be held to set a new schedule. Boucher is advised that because of the large number of requests for counsel that the court receives, the search for counsel may take several weeks or even months and there is no guarantee that the court will find counsel willing to represent him. If Boucher wishes to proceed *without* counsel, he should contact the court in writing.

ORDER

IT IS ORDERED that:

1. The motion for summary judgment filed by defendants W. Bradley Martin and Debra Tidquist, Dkt. 23, is GRANTED in part and DENIED in part. Boucher's

claims against Tidquist are DISMISSED. Boucher's claims against Martin will move forward.

2. All remaining deadlines are STRUCK and the case is STAYED pending recruitment of counsel for Boucher.

3. Defendants' motion to stay pretrial deadlines, Dkt. 44, is DENIED as moot.

Entered March 27, 2020.

BY THE COURT:

/s/
_____
JAMES D. PETERSON
District Judge