## IN THE UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF WISCONSIN

JOHN BOUCHER,

     Plaintiff,

                             CASE NO.: 18-cv-760-jdp

v.

W. BRADLEY MARTIN, DEBRA TIDQUIST
and TAMMY MAASSEN,

     Defendants.

## AMENDED COMPLAINT

For his Complaint, Plaintiff JOHN BOUCHER, hereby states and alleges as follows:

### JURISDICTION AND VENUE

1. This is an action for money damages for injuries sustained by Plaintiff as a result of acts, omissions, failure to act and/or deliberate indifference by Defendants against Plaintiff.

2. The Plaintiff asserts a claim for relief against the herein-named Defendants pursuant to 42 U.S.C. § 1983 and the Eighth Amendment of the United States Constitution. The aforementioned statutory and constitutional provisions confer original jurisdiction of this Court over this matter.

3.  This Court has jurisdiction pursuant to 28 U.S.C. § 1331 because this action arises under the United States Constitution and Laws of the United States, pursuant to 28 U.S.C. § 1343(a)(3) because this action seeks to redress the deprivation, under color of state law, of Plaintiff's civil rights.

4.  This Court has supplemental jurisdiction over all state law claims which arise out of the same facts common to Plaintiff's federal claims pursuant to 28 U.S.C. § 1367.

5.  The amount in controversy exceeds $75,000, excluding interests and costs.

6.  Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) because the Defendants reside in this district and because part of the events and omissions giving rise to Plaintiff's claims occurred within this district.

7.  Punitive damages are also properly awardable against Defendants and are hereby claimed as a matter of federal common law, *Smith v. Wade*, 461 U.S. 30 (1983) and, as such, are not subject to the pleading requirements or the differing standard of proof set forth in Wis. Stat. §895.043.

8.  A jury trial is demanded.

## PARTIES TO THE ACTION

9.  Plaintiff was, at all times relevant and material herein, a citizen of the United States, a resident of the State of Wisconsin, and a prisoner in the State of Wisconsin. At all times material hereto, JOHN BOUCHER, was an inmate residing at the

Jackson Correctional Institution ("JCI") of the Wisconsin Department of Corrections, and was entitled to all rights, privileges, and immunities accorded all residents of Jackson County, the State of Wisconsin, and citizens of the United States, pursuant to the Constitution of the United States and Articles I, Sections One, Five, Six and Nine of the Wisconsin Constitution.

10. Defendant W. BRADLEY MARTIN, M.D. ("MARTIN"), was an adult Citizen of the United States and a resident of the State of Wisconsin. At all times material hereto, Defendant MARTIN was a licensed Medical Doctor at JCI and an employee of the Wisconsin Department of Corrections. At all times relevant to this lawsuit he was acting under color of law and within the scope of his employment and authority, and pursuant to the policies customs and practices of JCI, which were the moving force behind the constitutional violations asserted herein. Defendant MARTIN allowed plaintiff to suffer severe medical neglect and deprivation of medical treatment by turning a blind eye to the risk. Defendant MARTIN was deliberately indifferent to the medical needs of Plaintiff. Defendant MARTIN's responsibilities, policies and practices remained consistent over the course of his employment at JCI. Defendant MARTIN, and the employees and/or agents of JCI working under his supervisory authority, are directly responsible for the provision of adequate, appropriate and humane medical care services to all prisoners residing

3

at JCI, including the Plaintiff herein, as contemplated by the Constitution and laws of the United States and of the State of Wisconsin.

11.   Defendant TAMMY MAASSEN, RN ("MAASSEN"), is an   adult citizen of the United States and a resident of the State of Wisconsin. Defendant MAASSEN was a Registered Nurse, licensed by the State of Wisconsin, employed by Wisconsin Department of Corrections as a Nursing Supervisor responsible for oversight and supervision of nursing staff at JCI. Defendant MAASSEN was responsible for the provision of healthcare to inmates at JCI. She is sued in her individual capacity. At all times relevant to the events at issue in this case acting under color of law within the scope of her employment and within the scope of her employment and authority, and pursuant to the policies customs and practices of JCI, which were the moving force behind the constitutional violations asserted herein. Defendant MAASSEN allowed plaintiff to suffer severe medical neglect and deprivation of medical treatment by turning a blind eye to the risk. Defendant MAASSEN was deliberately indifferent to the medical needs of Plaintiff. Defendant MAASSEN was responsible for training and supervising the nurses at JCI, the creation and implementation of policies and procedures at JCI, ensuring JCI and all HSU staff were in compliance with policies and procedures and inmate healthcare and safety which she neglected and/or ignored.

4

## FACTUAL ALLEGATIONS AS TO DEFENDANTS
## MARTIN AND MAASSEN

12.  That at all times material hereto, JOHN BOUCHER, was an inmate and being involuntarily detained at JCI under the direct custody, supervision, and care of the Warden and all subordinates at JCI.

13.  That at all times material hereto, both Defendant MARTIN and Defendant MAASSEN provided and administered supervision and oversight of medical staff, including registered nurses, licensed practical nurses and certified nursing assistants. Registered nurses, licensed practical nurses and certified nursing assistants perform the "intake" examination of prisoners upon their arrival at JCI, the purpose of which is to review each prisoner's medical history and make specific notations regarding the prisoner's existing condition(s), medical needs (if any) and pending course of treatment, in order to determine what each such prisoner might need by way of continuing attention and/or treatment during his term of incarceration at JCI.

14.  That at all times material hereto, both Defendant MARTIN and Defendant MAASSEN presided over nurse administration of Sick Call at JCI. At Sick Call, prisoners complaining of health problems, having submitted a written request for care, are screened and evaluated for the purpose of determining their need for an appointment with a physician. The nurses staffing Sick Call are also authorized to administer first aid and dispense, in limited quantities, prescription and non-prescription pain medication.

**Events Leading to Plaintiff's Right Shoulder Injury**

15.  In December 2014, Plaintiff injured his right shoulder in a bicycling accident in Mexico which left a massive tendon rupture in his right rotator cuff causing him excruciating pain and extremely limited range of motion in his right shoulder and arm.

16.  On December 4, 2014, Plaintiff turned himself into Custom and Border Patrol agents at the United States border crossing as he was a fugitive from an extended supervision violation in the State of Wisconsin. He was later transported to the San Diego County Jail.

17.  Plaintiff, while incarcerated in the San Diego County Jail, received some medical attention for his right shoulder. After treating the injury to Plaintiff's right shoulder as best he could, the attending physician diagnosed Plaintiff's shoulder as requiring an orthopedic consultation; however, Plaintiff was transferred to a different jail before he was able to see an orthopedic specialist.

**Events Prior to Orthopedic Consultation**

18.  Plaintiff arrived at Dodge Correctional Institution (DCI) on February 24, 2015 and met with DCI medical staff shortly thereafter. Plaintiff told the medical staff at DCI that he had sustained a serious injury to his right shoulder which caused continuous and severe pain.

19.  On March 3, 2015, DCI medical staff issued medical restrictions for Plaintiff

to have a low bunk, 1st floor only cell, cane and immobilizer for his shoulder and tennis shoes.

20.  On April 6, 2015, Dr. Parrish prescribed Gabapentin (pain medication) for Plaintiff to take for his pain associated with his shoulder injury.

21.   On May 5, 2015, Plaintiff was transferred from DCI to JCI. Upon his arrival at JCI, Plaintiff immediately submitted a health service request (HSR) explaining that he had been receiving medical care at DCI for injuries sustained to his ankle and shoulder. He requested a wheelchair for long distance ambulation.

22.  On May 7, 2015, Plaintiff met with Nurse Kostohryz. During the appointment, Nurse Kostohryz verified that Plaintiff had severe injuries and made a STST referral to Defendant MARTIN.

23.  Shortly thereafter, Defendant MARTIN entered the exam room and Plaintiff proceeded to explain to Defendant MARTIN that he was experiencing throbbing pain which he ruled 8/10 on the pain scale and severely decreased range of motion. Plaintiff then requested an MRI, a referral to an orthopedic specialist and a wheelchair for long distances because he had a permanently damaged right ankle from a 1989 accident which resulted in 8-10 surgical procedures. Additionally, Plaintiff asked Defendant MARTIN for a medical restriction to have an inmate handler deliver his meal trays.

24.  Defendant MARTIN told Plaintiff that he did not deserve either a wheelchair

or a meal tray delivery restriction. Plaintiff replied that it was so painful to walk that he could barely walk to obtain his pain medication three times per day as prescribed.

25.  Defendant MARTIN issued Plaintiff a permit to use a walker (with no wheels). Immediately after his visit with Plaintiff, Defendant MARTIN called to Plaintiff's housing unit and advised Sergeant Archer that Plaintiff was required to pick up his own meal trays. Inmate handlers typically delivered Plaintiff's meal trays as a result of his serious medical conditions.

26.  On May 9, 2015, Plaintiff walked to the HSU for pain medication, during which time he fell and sustained injuries. Upon his arrival to the HSU, Plaintiff requested immediate medical attention, to no avail.

27.  On May 11, 2015, Plaintiff filed inmate complaint No. JCI-2015-8484, in which he complained about being given a walker because the walker aggravated his right shoulder pain. On May 21, 2015, the Appropriate Reviewing Authority decision was to dismiss Plaintiff's complaint with modification.

28.  On August 15, 2015, Plaintiff submitted an Information/Interview request to the HSU supervisor, Defendant MAASSEN, requesting permission for him to use a wheelchair for long distance ambulation.

29.   In her response dated August 26, 2015, Defendant MAASSEN wrote "Your request for a wheelchair will need to be evaluated by Special Needs Committee-can temporarily allow W/C use in bad weather."

30.   Plaintiff was next seen for his shoulder by Nurse Kostohryz on April 18, 2016, after he submitted an HSR on April 16, 2016. Plaintiff reported that the pain in his right shoulder had not improved since the injury. After conducting an examination, Nurse Kostoryz scheduled Plaintiff for a follow-up appointment with a physical therapist.

31.   On April 22, 2016, Plaintiff submitted an HSR on which he inquired about his appointment with the physical therapist. He also stated that his shoulder continuously caused him severe pain.

32.   On April 28, 2016, Plaintiff was evaluated by the physical therapist. The physical therapist noted "Right shoulder pain since being hurt after getting hit by a car; pain intensity 8/10, most likely caused by rotator cuff compromise."

33.   Upon his return to HSU, Plaintiff was seen by Nurse Tidquist, she ordered six weeks of physical therapy. However, six weeks of therapy did not alleviate Plaintiff's pain, instead, the pain increased and Plaintiff suffered increased pain levels due to the aggravation of his existing injuries.

34.   On June 21, 2016, Plaintiff reported to Nurse Tidquist that physical therapy was not alleviating his shoulder pain but, rather, aggravating it and making it worse. Plaintiff described his physical condition as unchanged (not improving) – he could not lift his right arm (frozen shoulder). Plaintiff requested an MRI and an orthopedic consultation but was denied by Nurse Tidquist.

35.   On August 24, 2016 and September 1, 2016, Plaintiff visited Nurse Tidquist again and complained that he continuously experienced severe shoulder pain. His physical examination at both visits revealed severely limited range of motion (frozen shoulder) in the right shoulder.

36.   Plaintiff wrote a series of HSR's during the summer of 2016 dated May 2nd, May 20th, June 17th, June 20th, June 26th and July 1st, complaining about his shoulder pain and requesting an orthopedic consultation, all to no avail nor legitimate response.

**The Diagnosis**

37.   On September 14, 2016, approximately 69 weeks (1 year; 4 months) later, after arriving at JCI, Defendants finally ordered an MRI. It disclosed a full thickness rotator cuff rupture with evidence of muscle atrophy and retraction. Plaintiff received the results on October 11, 2016, Defendant MARTIN scheduled a consultation with Dr. Grossman, an orthopedic surgeon, on November 9, 2016.

38.   Dr. Grossman examined Plaintiff and reviewed his MRI results, he noted "obvious atrophy posteriorly." That Plaintiff had "remarkably little shoulder motion," and that the "chronic rotator cuff tear .... appears to be 'unrepairable'".

39.   On November 15, 2016, Plaintiff filed offender complaint JCI-2016-25332, complaining about the irreparable harm to his right shoulder as a result of the named Defendants' delayed medical care. The complaint was dismissed by the Appropriate

Reviewing Authority in December 2016. Plaintiff appealed that decision. On January 6, 2017, the Corrections Complaint Examiner issued a recommendation to dismiss the appeal. The Secretary accepted CCE's recommendation on January 25, 2017.

### COUNT I – 42 U.S.C. § 1983 -VIOLATION OF 8TH AMENDMENT
### Deliberate Indifference – Denial of Medical Care
### (Defendants Martin and Maassen)

40.  Each paragraph of this Complaint is incorporated as if restated fully herein.

41.  As more fully described above, Defendants had notice of Plaintiff's medical needs and the seriousness of his medical needs and knew the unreasonable risk of harm to Plaintiff if he did not receive appropriate medical care. Despite that knowledge, Defendants failed to provide him with proper medical care or access to medical care, in violation of the Eighth Amendment to the United States Constitution.

42.  As a result of the unjustified and unconstitutional actions/inactions of Defendants, Plaintiff experienced pain, suffering and emotional distress.

43.  Defendants were deliberately indifferent to Plaintiff's objectively serious medical needs, exposed him to an unreasonable risk of harm, and their actions were undertaken intentionally, with malice, willfulness, and/or reckless indifference to the rights of others.

44. Plaintiff's injuries were proximately caused by the policies and practices of Defendants.

45. By August 2015, Defendant MAASSEN was on notice of a widespread practice at JCI of nursing staff ignoring the serious medical needs of detainees like Plaintiff, thereby exposing them to unreasonable risk of harm. At JCI detainees with clear symptoms of serious medical illness, injury, or conditions who ask for medical care or to see a doctor are routinely delayed or completely ignored.

46. Specifically, there exists a widespread practice at JCI under which jail employees, including correctional officers and medical personnel, commonly fail or refuse to: (1) properly examine a detainee with a serious medical condition; (2) provide proper medication to a detainee with a serious medical condition; (3) respond to detainees who have requested medical attention or medication or asked to see a doctor; (4) respond to detainees who exhibit obvious signs of a serious medical condition or illness; or (5) adequately staff the jail with correctional and medical personnel necessary to respond to detainee needs.

47. This widespread practice is allowed to flourish because Defendant MASSEN, as Nursing Staff Supervisor, directly encourages, and is thereby the moving force behind, the very type of misconduct at issue by failing to adequately train, supervise, and control medical personnel, and by failing to adequately punish and discipline prior instances of similar misconduct, thus directly encouraging future

abuses such as those affecting Plaintiff. In this way, Defendant MAASSEN violated Plaintiff's rights by maintaining policies and practices that were the moving force driving the foregoing constitutional violations.

48.  At all times relevant to the events at issue in this case, Defendant MAASSEN was charged with the duties of providing healthcare to detainees housed at JCI, including Plaintiff. As the provider of healthcare services to detainees at JCI, Defendant MAASSEN was responsible for the creation, implementation, oversight, and supervision policies, practices and procedures regarding the provision of medical care to detainees in JCI custody.

49.  Prior to the events giving rise to Plaintiff's lawsuit, Defendant MAASSEN had notice of policies and widespread practices by medical personnel at JCI pursuant to which detainees like Plaintiff with serious medical conditions were routinely denied medical care and evaluation, and access to medical care and evaluation, and exposed to unreasonable risks of harm. In JCI detainees with clear symptoms of serious medical conditions who ask for medical care or to see a doctor are routinely delayed or completely ignored.

50.  Despite knowledge of these problematic policies and practices, Defendant MAASSEN did nothing to ensure that inmates at JCI received adequate medical care and access to medical care, thereby acting with deliberate indifference.

51.   Plaintiff's injuries were caused by Defendants MARTIN and

13

MAASSEEN, who acted pursuant to the foregoing policies and practices in engaging in the misconduct described in this Count.

## COUNT II – 42 U.S.C. § 1983
### Supervisory Liability
### (Defendants Martin and Maassen)

52. Each Paragraph of this Complaint is incorporated as if restated fully herein.

53. As described more fully above, Defendant MAASSEN, was responsible for ensuring that detainees at JCI received constitutionally adequate care and access to medical care.

54. Defendant MAASSEN, knew or reasonably should have known of a widespread pattern of inadequate medical care, inadequate access to medical care and inadequate correctional and medical staffing at the jail.

55. Defendant MAASSEN approved, condoned and/or turned a blind eye to or purposefully ignored the pattern of inadequate medical care, inadequate access to medical care, and inadequate correctional and medical staffing at the jail.

56. As a result of the misconduct described in this Count, Plaintiff suffered damages, including but not limited to physical and emotional distress and anguish.

57. As described more fully above, Defendant MARTIN, was responsible for ensuring that detainees at JCI received constitutionally adequate care and access to medical care.

58.  Defendant MARTIN, knew or reasonably should have known of a widespread pattern of inadequate medical care, inadequate access to medical care and inadequate correctional and medical staffing at the jail.

59.  Defendant MARTIN approved, condoned and/or turned a blind eye to or purposefully ignored the pattern of inadequate medical care, inadequate access to medical care, and inadequate correctional and medical staffing at the jail.

60.  As a result of the misconduct described in this Count, Plaintiff suffered damages, including but not limited to physical and emotional distress and anguish.

## COUNT III – STATE CLAIM
## MEDICAL MALPRACTICE/NEGLIGENCE AGAINST
## DEFENDANTS MARTIN AND MAASSEN

61.  Each Paragraph of this Complaint is incorporated as if fully stated herein.

62.  Defendants MARTIN and MAASSEN failed to exercise that degree of care and skill which is exercised by the average practitioner in the class to which they belong, acting in the same or similar circumstances. *Sawyer v. Midelfort*, 227 Wis.2d 124, 149, 595 N.W.2d 423, 435 (1999); *Schuster v. Altenberg*, 144 Wis.2d 223, 229, 424 N.W.2d 159, 161B62 (1988).

63.  Defendants MARTIN and MAASSEN, jointly and severally, breached their duty owed to Plaintiff which resulted in harm to Plaintiff. *Paul v. Skemp*, 2001 WI 4217, 242 Wis.2d 507, 625 N.W.2d 860 (2001).

64.  Defendants MARTIN and MAASSEN failed to use the required degree of

skill exercised by an average respective medical professional, Plaintiff was harmed and there is a causal connection between the Defendants' failure and Plaintiff's harm. Wis. JI Civil 1023.

65. Defendants' MARTIN and MAASSEN conduct fell below the standard of care by failing to treat Plaintiff's shoulder sooner resulting in irreparable damage, intense pain and suffering and mental anguish.

66. Defendants MARTIN and MAASSEN undertook and owed to Plaintiff the duty to make reasonable efforts to care for him in a reasonably prudent manner, to exercise due care and caution and to follow the common law as it relates to persons in their custody and/or charge who are unable to care for themselves or seek medical attention while in custody.

67. Defendants MARTIN and MAASSEN negligently, carelessly and recklessly ignored Plaintiff's immediate need for medical treatment resulting in significant, irreparable damage to Plaintiff's right shoulder, arm and further inflicted cruel and unusual punishment upon Plaintiff for which there existed no legitimate or reasonable penological interest and wholly against public policy.

68. Defendants MARTIN and MAASSEN negligently, recklessly ignored Plaintiff's need for immediate diagnostic examination, orthopedic examination and treatment and need for surgical intervention. Had Defendants, wholly under their authority, purview and ability, made proper reference to outside medical care and

treatment for Plaintiff, Plaintiff would not have languished without adequate medical care and suffered needlessly, pain and suffering which continues to this date.

### COUNT IV- STATE CLAIM-INDEMNIFICATION
### WIS. STAT. 895.46 STATE AND POLITICAL SUBDIVISIONS
### THEREOF TO PAY JUDGMENTS TAKEN AGAINST OFFICERS
### AS TO DEFENDANTS

69.   Each Paragraph of this Complaint is incorporated as if fully stated herein.

70.   Wisconsin law, Wis. Stat. 895.46, requires public entities to pay any tort judgment for damages for which employees are liable within the scope of their employment activities.

71.   Defendants MARTIN and MAASSEN were employees of JCI, who acted within the scope of their employment in committing the misconduct described herein.

WHEREFORE, Plaintiff, JOHN BOUCHER, respectfully requests that this Court enter judgment in his favor against all Defendants, jointly and severally, named herein and made a part hereof, awarding compensatory damages and attorney's fees, as well as punitive damages against all applicable Defendants in their individual capacities, as well as any other relief this Court deems just and appropriate.

### JURY DEMAND

Plaintiff, JOHN BOUCHER, hereby demands a trial by jury pursuant to

Federal Rules of Civil Procedure 38(b) on all issues so triable.

Dated: October 9, 2020

RESPECTFULLY SUBMITTED,

_____
Lonnie D. Story, Esquire
Attorney for Plaintiff
STORY LAW FIRM, LLC
Wis. Bar #1121459
732 N. Halifax Avenue, #301
Daytona Beach, Florida 32118
(386) 492-5540
lstorylaw@gmail.com